UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

ROBIN WYNN,

    Plaintiff,

v.                                                             Case No. 11-C-639

MICHAEL ASTRUE,

    Defendant.

---

DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER
AND REMANDING CASE

Robin Wynn appeals the decision of the Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Wynn alleged disability beginning on September 1, 2007, and her claim was denied initially and on reconsideration. The ALJ adjourned the July 7, 2010, hearing to allow additional time to retain counsel. (Tr. 453-459.) Wynn appeared with counsel on August 26, 2010. (Tr. 460-505.) On October 29, 2010, the ALJ found that Wynn was not disabled. He reasoned that Wynn did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, specifically Listing 12.05(C). The ALJ also found that Wynn was capable of performing past relevant work as an office clerk and waitress. (Tr. 19-28.) After the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner.

On appeal, this court must affirm the Commissioner if the findings are supported by substantial evidence in the record and the decision is free of legal error. 42 U.S.C. 405(g); *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir. 2004). Substantial evidence is more than a

scintilla, but less than a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995). However, when an ALJ fails to adequately support his conclusions, a remand is appropriate. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

Wynn maintains that the ALJ denied her claim based in part on a mischaracterization of counsel's argument. In addition, Wynn argues that there is no basis for the finding that she did not meet or medically equal the requirements of Listing 12.05(c). Finally, the ALJ never discussed his reasons for rejecting the treating source opinion.

In referring to counsel's opening statement, the ALJ wrote that Wynn's counsel noted that the claim was "largely based on mental limitations." (Tr. 24.) Again, on page 27 of the decision, the ALJ referred to counsel's opening statement that the "the claim for disability insurance benefits and supplemental security income was largely on mental (and not physical limitations)." At the end of the decision, the ALJ supported his residual functional capacity assessment with "the objective medical evidence of record as well as the statements by the claimant and her representative regarding her own limitations." (Tr. 28.)

The ALJ did not state counsel's position accurately. Counsel's actual statement is located on pages 464-466 of the transcript:

> My position in this case is two-fold or the Complainant's position is two-fold. The first argument would be 12.05(c) under mental retardation. In support of that Dr. Rudolph's CE marked as Exhibit 4f indicates a valid full scale IQ of 70, which meets the cutoff for 12.05(C) and the second factor under

> 12.05(C) would be other mental – physical or other mental impairment imposing an additional and significant work-related limitation ...

Because Listing 12.05(C) requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function, counsel was referring to both. There is no indication that counsel intended to waive any argument that Wynn suffered from a physical impairment. The Commissioner appears to recognize this error in taking the position that "even if the ALJ misstated Wynn's attorney's statements, he did not disregard Wynn's physical conditions." (Doc. 13, p. 7.)

It is not clear in reading the decision whether the ALJ complied with the regulations and properly considered Wynn's mental and physical impairments. As a result, the court is uncertain whether the ALJ's decision is based on substantial evidence.

Turning first to the ALJ's step three determination, he found that Wynn had the following severe impairments: borderline intellectual functioning, a learning disability (by history), degenerative disc disease of the thoracic spine, right wrist arthralgia, and obesity. He further noted that the medical evidence contained the diagnosis of "morbid obesity" but that Wynn had not noted functional limitations as a result of her weight. (Tr. 21.) Nevertheless, he determined that Wynn did not meet or medically equal the listed impairments. (Tr. 22.)

With respect to Listing 12.05(c), this analysis is confusing at best. The ALJ cited 12.05 and its subparagraphs but did not appear to analyze the three prongs of Listing 12.05(c):

> The claimant's mental impairment has been considered under the requirements of listing 12.05(c). Mental retardation refers to significantly sub

> average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.
>
> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

(Tr. 22.)

Wynn has a full-scale IQ of 70 and the ALJ does not question the validity of that score. (Tr. 25.) To make his finding under Listing 12.05(c), the ALJ needed to discuss all three prongs: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function; and (3) a finding of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. An IQ over 60, by itself, is insufficient to establish disability under Listing 12.05, since people with low IQ's may be able to sustain gainful employment. *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007). Therefore, a claimant with an IQ between 60 and 70 also must show a "physical or other mental impairment" that creates an additional, and significant, limitation on her ability to work. 20 C.F.R. § 401, pt. 404, subpt. P, app. 1 § 12.05(C). *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

By finding that Wynn "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," it is not clear whether the ALJ disregarded

4

the qualifying full scale IQ score or didn't find the other two prongs. The ALJ did find the following severe physical impairments of degenerative disc disease of the thoracic spine, right wrist arthralgia, and obesity but there is no discussion with respect to these impairments in connection with 12.05(c). Moreover, he never mentions the third prong, which requires an onset date prior to 22. The medical evidence in the record would support such a finding.

The Commissioner argues that Wynn failed to satisfy the diagnostic description of mental retardation and asserts that "not a single medical source found that Plaintiff was mentally retarded." In fact, the Commissioner goes to great lengths to argue that Dr. Gregory Rudolph, the consultative psychologist, diagnosed Wynn with borderline intellectual functioning and would have diagnosed her with mental retardation if he felt there were such deficits. These arguments are not the findings of the ALJ and not supported by the record. Moreover, in *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006), the Seventh Circuit Court of Appeals rejected the Commissioner's argument that the ALJ must first determine that the claimant is mentally retarded as defined in section 12.05's introductory paragraph. Rather, an ALJ must determine that the claimant's mental deficits were manifested before the age of 22. *Id.* In addition, the Seventh Circuit chastised the Commissioner for defending the ALJ's decision on a ground he did not mention. *Id.*, 439 F.3d at 362.

The decision is flawed in other respects. To begin, the ALJ utilized the same boilerplate language so often criticized in this circuit:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

5

> intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 23.) The Seventh Circuit has criticized this recitation as unhelpful, and worse, as implying "that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). Similarly, the ALJ pointed out that Wynn had been diagnosed as having obesity, yet it is not clear whether he is relying on medical evidence to support a finding that it may be remedied by diet. *See generally Barrett v. Barnhart*, 355 F.3d 1065, 1068. (7th Cir. 2004).

As a final matter, the ALJ did not provide a basis for rejecting the treating source medical opinion of Dr. Rocco. Social security regulations provide that more weight is generally given to opinions from treating physicians, as they are in the best position to provide a detailed, longitudinal assessment of the claimant's condition. *See, e.g., Farrell v. Astrue*, 2012 WL 3686383, at *5 (7th Cir. Aug. 28, 2012) (citing 20 C.F.R. § 404.1527(c)). Accordingly, an ALJ must offer "good reasons" for discounting the opinion of a treating source. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record, the ALJ must afford it "controlling weight." 20 C.F.R. § 404.1527(c)(2); SSR 96–2p; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Even if the ALJ finds sound reasons for not giving the opinion controlling weight, he may not simply reject it, SSR 96–2p; rather, he must then decide what weight the opinion does deserve, considering a "checklist" of factors including the length, nature, and extent of the treatment relationship; frequency of examination; the

physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).

The only analysis with respect to the treating physician is limited to the following:

Postoperative examinations were largely unremarkable, and on August 24, 2010, a treating physician agreed with the restrictions/limitations found by the functional capacity evaluation fo the claimant on November 13, 2009.

...

In making the aforementioned assessment, I acknowledge the claimant underwent a functional capacity evaluation in November of 2009 and that it was the opinion of the examining physical therapist that the claimant had findings that suggested that she would be unable to support the occasional walking, standing, and repetitious grasping/fine motor activity required for regular full-time sedentary work due to right knee pathology, lumbar spine pathology, and bilateral carpal tunnel syndrome. However, I point out that said opinion is not consistent with the objective medical evidence that failed to show marked abnormalities upon physical examinations and x-ray examinations, and the representative's opening statement that the claimant's claim for supplemental security income and disability insurance benefits is largely based on mental (and not physical) limitations.

(Tr. 27-28.)

Relying on counsel's statements to discredit the treating physician is unsupported by the record. Wynn's counsel never limited her claim to a mental impairment. Moreover, it is not clear what standard the ALJ is applying in finding an absence of marked abnormalities on physical examinations and how this undermines the limitations and restrictions in the functional capacity assessment adopted by Dr. Rocco. On remand, the ALJ shall consider mental and physical impairments, the criteria of Listing 12.05(c), and address the weight to be given the opinions of Dr. Rocco after considering the checklist of facts set forth under Seventh Circuit case law. Now, therefore,

IT IS ORDERED that the decision of the Commissioner is reversed.

7

IT IS FURTHER ORDERED that the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE